**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DIFFERENTIAL DEVELOPMENT-<br>1994, LTD AND DEAN LEE d/b/a<br>PRO CLEANERS, | § <br> § <br> § <br> § | |
| Plaintiffs, | § <br> § | |
| v. | § <br> § <br> § | CIVIL ACTION NO. H-05-3375 |
| HARKRIDER DISTRIBUTING CO. *et al.*, | § <br> § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Among the questions presented by the motions to dismiss in this case is the question the Supreme Court left unresolved in *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004): whether a party potentially responsible for the cleanup of property contaminated by hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), but not able to bring an action for contribution under section 113(f) of that statute, may bring a cost recovery or contribution action against another potentially responsible party under section 107(a).[1]  The Fifth Circuit has not addressed this issue since the Supreme Court decision.  District court decisions in this circuit

---

[1] 42 U.S.C. §§ 9601, 9613, 9607(a).  "Potentially responsible party" and "PRP" are not used in CERCLA, but rather are terms used by courts and the federal Environmental Protection Agency ("EPA") to refer to parties that potentially bear some liability for the contamination of a site.  *See, e.g., New Castle County v. Halliburton NUS Corp.*, 111 F.3d 116, 1120 at n. 2 (3d Cir. 1997).

1

conflict.[2]  Since the Supreme Court's decision, the Eighth Circuit and the Second Circuit have held that a potentially responsible party may bring an action against another potentially responsible party under section 107(a).[3]  The Third Circuit has rejected this approach and reaffirmed its earlier precedent that a potentially responsible party may not sue another potentially responsible party for cost recovery or contribution under section 107(a) or federal common law.[4]  *Certiorari* petitions are pending, asking the Supreme Court to resolve the circuit conflict.

The Supreme Court declined to reach the section 107 claim in *Cooper Industries* because the relationship between sections 107 and 113 had not been fully briefed and "merit[ed] full consideration by the courts below."  543 U.S. at 169.  Deciding the pending motions to dismiss is but one step on the way to binding precedent on the issue from either the Fifth Circuit or the Supreme Court.  For the reasons stated below, this court grants the motion to dismiss the CERCLA section 107(a) and section 113(f) claims.  Because the only federal claims in the case are dismissed, this court declines to continue to exercise

---

[2] *Compare Aviall Services v. Cooper Indus., LLC*, 2006 WL 2263305 (N.D. Tex. Aug. 8, 2006) *and Columbus McKinnon Corp. v. Gaffey*, 2006 WL 2382463 (S.D. Tex. Aug. 16, 2006) (finding no section 107(a) cost recovery claim if the plaintiff cannot assert a claim under section 113(f)) *with Vine Street LLC v. Keeling*, 362 F.Supp.2d 754 (E.D. Tex. 2005) (potentially responsible party that cannot bring a contribution claim under section 113(f) may bring a claim under section 107(a) against other potentially responsible parties).

[3] *Atlantic Research Corp. v. United States*, 459 F.3d 827, 832 (8th Cir. 2006); *Consolidated Edison Co. of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90, 99 (2d Cir. 2005).

[4] *E.I. DuPont De Nemours & Co. v. United States*, 460 F.3d 515, 532 (3d Cir.2006).

2

jurisdiction over the remaining state-law claims and dismisses those claims, without prejudice.

## I.     Background

Differential Development-1994, Ltd. is a limited partnership that owned a shopping center in Houston, Texas beginning in the mid 1990s.  Differential Development no longer owns the shopping center but did when this suit was filed. Dean Lee leased space in the shopping center where he operated Pro Cleaners, a dry-cleaning business, from 1999 to the present.  In the fifth amended complaint, Differential and Pro Cleaners allege that dry-cleaning chemicals collectively known as "PERC" have contaminated groundwater under and around the shopping center.[5]  The parties do not dispute that PERC is a hazardous substance as defined in 42 U.S.C. § 9601(14).

Differential Development and Pro Cleaners allege that they began an ongoing investigation and cleanup of the surface and subsurface PERC contamination in 2003.  (*Id.* at 3).  In July 2004, Differential and Pro Cleaners entered into a Voluntary Cleanup Program (VCP) Agreement with the Texas Commission on Environmental Quality (TCEQ), in which they did not admit liability but applied to participate in a voluntary cleanup program.  In the VCP Agreement, the TCEQ stated that it would not bring an enforcement action against Differential Development and Pro Cleaners during the term of the Agreement.  Differential Development and Pro Cleaners reserved their right to seek contribution or "any other

---

[5] PERC refers to contaminants that include perchloroethylene (also known as tetrachloroethylene) and/or its degradation byproducts including trichloroethylene and its degradation byproducts. (Docket Entry No. 84, p. 4).

available remedy" against "any person . . . found to be responsible or liable for contribution

. . . or otherwise for any amounts which have been or will be expended by the Applicant in

connection with the Site."  (Docket Entry No. 104, Ex. C at 7).  Differential Development

and Pro Cleaners claim to have incurred substantial costs implementing the Agreement and

expect to incur future response costs.  The VCP Agreement has not been completed.

Differential Development and Pro Cleaners have sued the City of Houston and two

companies, alleging that they caused or contributed to the PERC contamination surrounding

the shopping center.  Differential Development and Pro Cleaners allege that wastewater

containing PERC was discharged by Pro Cleaners into the City's sewer system.  Differential

Development and Pro Cleaners allege that the sewer lines near the shopping center had gaps

and cracks from which the PERC was released.  Differential Development and Pro Cleaners

also allege that Pro Cleaners obtained its dry-cleaning chemicals from Harkrider Distributing

Co., n/k/a/ KSB, Inc. and that spills from Harkrider's delivery trucks and/or other product

containers during its operations caused or contributed to the PERC contamination.

Differential Development and Pro Cleaners allege that Pro Cleaners contracted with Safety-

Kleen Systems, Inc. for waste-management services and that spills from Safety-Kleen service

trucks and/or other waste containers during its operations caused or contributed to the PERC

contamination.

Differential Development and Pro Cleaners assert that they are not "responsible

parties" under CERCLA because they did not own or operate a "facility" from which PERC

"releases" to the environment occurred.  Differential Development and Pro Cleaners assert

that the "releases" occurred from the City sewer lines and/or the Harkrider and Safety-Kleen trucks or containers, not the dry-cleaning establishment.  (Docket Entry No. 84 at 6-12). They assert that Harkrider, Safety-Kleen, and the City of Houston are liable under sections 107(a) and 113(f) for the response costs.  Differential Development and Pro Cleaners alternatively assert that even if they are potentially responsible parties under CERCLA, they nonetheless have the right to recover response costs from the City, Harkrider, and Safety-Kleen under sections 107(a) and 113(f) of CERCLA.  Differential Development and Pro Cleaners also seek a declaratory judgment that the City of Houston, Harkrider, and Safety-Clean are jointly and severally liable or each liable for a proportionate share of past and future costs to clean up the PERC contamination under and around the shopping center.

The fifth amended complaint also asserts claims for contribution under the Texas Solid Waste Disposal Act, TSWDA, Tex. Health & Safety Code § 361.344.  The TSWDA contribution claims are asserted against Harkrider and Safety-Kleen.  (Docket Entry No. 84 at15-16).  Differential Development and Pro Cleaners also assert state-law negligence claims against Harkrider and Safety-Kleen for their alleged failure to use reasonable care in delivering dry-cleaning chemicals and providing waste-management services to Pro Cleaners.      The fifth amended complaint also asserts state-law claims against CB Richard Ellis, Inc. (CBRE), the property manager of the shopping center that Differential Development owned and where Pro Cleaners leased space.  Differential Development alleges that CBRE breached its management contract by not using reasonable efforts to ensure that Pro Cleaners complied with the lease provisions prohibiting it from disposing of

contaminants and requiring that it maintain $1 million in environmental insurance coverage. Differential Development alleges that CBRE is liable for failing to disclose that Pro Cleaners had allowed its environmental insurance coverage to lapse for two years.   Differential Development also allege that CBRE is liable for failing to provide  environmental insurance for the shopping center.   Differential alleges that CBRE also failed to collect rent from other tenants in the shopping center.   The claims against CBRE are state common-law claims for negligence, breach of contract, breach of fiduciary duty, and fraud.

Harkrider and Safety-Kleen moved under Rule 12(b)(6) to dismiss the CERCLA claims asserted in the various amended complaints.  (Docket Entry Nos. 7, 9, 12, 97).  CBRE moved under Rule 12(b)(1) to dismiss the CERCLA claims against the City, Harkrider, and Safety-Kleen and to dismiss the state-law claims against CBRE once the federal claims are dismissed.   (Docket Entry No. 92).   Differential Development and Pro Cleaners have responded, (Docket Entry No. 22, 101, 104).

The City of Houston filed cross-claims after the fifth amended complaint.  (Docket Entry No. 91).  Differential Development filed motions to dismiss the cross-claims for lack of subject-matter jurisdiction and for failure to state a claim under the Texas Water Code. (Docket Entry Nos. 100, 101).  The City of Houston has responded.  (Docket Entry No. 105).

Based on the pleadings, the motions, responses, and replies, the parties' submissions, and the applicable law, this court dismisses the CERCLA claims and declines to continue to exercise supplemental jurisdiction over the remaining state-law claims.  The reasons are set out below.

## II.    The Legal Standard

The parties dispute whether this court should apply Rule 12(b)(6) or Rule 12(b)(1) to the motions to dismiss.  Harkrider and Safety-Kleen moved under Rule 12(b)(6) to dismiss the CERCLA claims, (Docket Entry Nos. 7, 9, 12, 97), and CBRE moved to dismiss under Rule 12(b)(1), (Docket Entry No. 92).  Differential Development and Pro Cleaners argue that Rule 12(b)(6) is the appropriate standard.

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject-matter jurisdiction of the federal district court.  "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'"  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  Federal courts are courts of limited jurisdiction and, absent jurisdiction conferred by statute or the Constitution, are without power to adjudicate claims.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), *cert. denied*, 534 U.S. 993 (2001).  The burden of establishing federal jurisdiction rests on the party seeking to invoke it.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002); *Howery*, 243 F.3d at 916.

"Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'"  *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997); *see also Williamson v. Tucker*, 645 F.2d 404,

412 (5th Cir. 1981).  "Facial attacks on the complaint 'require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Garcia*, 104 F.3d at 1261; *see also Williamson*, 645 F.2d at 412.  When a facial attack is involved, as with a motion under Rule 12(b)(6), "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss.*, 143 F.3d at 1010 (citing *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992)).  A factual attack  challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia,* 104 F.3d at 1261; *see also Williamson*, 645 F.2d at 413.

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the formal sufficiency of the statement of a claim for relief.  "'A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  "'The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.' " *Shipp v. McMahon*, 234 F.3d 907, 911 (5th Cir. 2000), *cert. denied*, 532 U.S. 1052  (2001).  "[W]hen considering a Rule 12(b)(6) motion  to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory." *Id.*

8

(citing *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994)). In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Ramming*, 281 F.3d at 161; *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000). To avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations. *Kane Enters. v. MacGregor Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). A court "will thus not accept as true conclusory allegations or unwarranted deductions of fact." *Id.* (quoting *Collins*, 224 F.3d at 498). A district court considers the contents of the pleadings, as well as documents that are attached to the complaint or that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the claim. *Collins*, 224 F.3d at 496.

If subject-matter jurisdiction is intertwined with the merits of the case, a motion to dismiss should be brought and resolved under Rule 12(b)(6), not Rule 12(b)(1). *Holt v. U.S.*, 46 F.3d 1000 (10th Cir. 1995); *Paper, Allied-Industrial, Chemical and Energy Workers Intern. Union v. Continental Carbon Co.*, 428 F.3d 1285 (10th Cir. 2005). Subject-matter jurisdiction and the merits are considered to be intertwined if subject-matter jurisdiction depends on the same statute that provides the substantive claim in the case. *Holt*, 46 F.3d at 1003. Whether Rule 12(b)(6) or Rule 12(b)(1) applies also depends on whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim. *Sizova v. Natl. Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002); *Pringle v. United*

*States*, 208 F.3d 1220, 1223 (10th Cir. 2000).  If so, Rule 12(b)(6) is the appropriate procedural vehicle.

In this case, deciding whether this court has federal-question jurisdiction depends on whether Differential Development and Pro Cleaners have alleged a cause of action under CERCLA.  Resolution of the jurisdictional question requires resolving whether CERCLA allows parties such as Differential Development and Pro Cleaners to assert cost recovery and contribution claims under the facts they have alleged.  Such a motion is properly decided under Rule 12(b)(6), not Rule 12(b)(1).  Courts have considered motions to dismiss similar CERCLA claims under Rule 12(b)(6), although the CERCLA claims were in many cases the sole source of federal  jurisdiction.[6]

The motions to dismiss are decided under Rule 12(b)(6), not Rule 12(b)(1).[7]

## III.    The Motions to Dismiss the CERCLA Claims

### A.    The Statutory Framework

---

[6] *See AMCAL Multi-Housing, Inc. v. Pac. Clay Products*, 2006 WL 3016326 (C.D. Cal. Oct. 10, 2006) (considering motion to dismiss CERCLA claims alleging that the plaintiff was a PRP under Rule 12(b)(6)); *Carrier Corp. v. Piper*, 2006 WL 3025842 (W.D.Tenn. Sept. 30, 2006) (same); *Columbus McKinnon Corp. v. Gaffey*, 2006 WL 2382463 (S.D. Tex. Aug. 16, 2006) (same); *Sunnyside Development Corp., LLC v. Opsys U.S. Corp.*, 2006 WL 1128039 (N.D.Cal. Apr. 27, 2006) (same); *The Durham Mfg. Co. v. Merriam Mfg. Co.*, 128 F.Supp.2d 97 (D. Conn. 2001) (same); *see also Signature Combs, Inc. v. U.S.*, 248 F.Supp.2d 741 (W.D. Tenn. 2003) (considering statutory defense under CERCLA using Rule 12(b)(6)); *Daimler Chrysler Corp. v. BFI Waste Systems*, 2002 WL 1033100 (N.D. Ill. 2002) (same); *Portsmouth Redevelopment and Housing Authority v. BMI Apartments Associates*, 827 F.Supp. 354 (E.D. Va. 1993) (considering whether activity was "disposal" under CERCLA using Rule 12(b)(6)).

[7] Although Rule 12(b)(1) and Rule 12(b)(6) are distinct, in many cases, the standard does not change the outcome.  This is one of those cases.  Considering the motion to dismiss under Rule 12(b)(6) allows this court to consider most of the materials submitted by the parties, because the materials are largely referred to in the complaint and attached to the motions to the dismiss.

Congress enacted CERCLA in 1980 in response to environmental and health dangers posed by property contamination from hazardous substances. *United States v. Bestfoods*, 524 U.S. 51, 55 (1998).  As amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub. L. No. 99- 499, 100 Stat. 1613, CERCLA provides several alternative means for cleaning up contaminated property.  Sections 104 and 106 provide for federal abatement and enforcement actions to compel cleanup of contaminated sites.  *See* 42 U.S.C. §§ 9604, 9606(a).  Section 107(a)(4) states that "covered persons" may be liable for costs incurred by the federal or state government or Indian tribes in responding to the contamination and for response costs incurred by "any other person."  *See* 42 U.S.C. § 9607(a)(4)(A)–(B).  Section 107(a)(4) is part of the original statute enacted in 1980.  Two express contribution provisions, sections 113(f)(1) and 113(f)(3)(B), were added later, as part of SARA.  All three are invoked in this case.

Section 107(a) identifies four categories of "[c]overed persons" who may be liable for cleanup costs associated with the release or threatened release of hazardous substances.  *See* 42 U.S.C. § 9607(a).  Covered persons are defined as: (1) owners and operators of facilities at which hazardous substances are located; (2) past owners and operators of such facilities at the time that disposal of hazardous substances occurred; (3) persons who arranged for disposal or treatment of hazardous substances; and (4) certain transporters of hazardous substances.  *See* 42 U.S.C. § 9607(a)(1)-(4).  Unless they can invoke a statutory defense or exclusion, covered persons are liable for, *inter alia*, "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with

11

the national contingency plan," and "any other necessary costs of response incurred by any

other person consistent with the national contingency plan," 42 U.S.C. § 9607(a).[8]   The

terms "person," "facility," "disposal," "release," and "environment" are defined in the

statute.[9]  CERCLA also provides a narrow set of defenses to liability that may arise under

_____

[8] The national contingency plan consists of federal regulations that prescribe the procedure for conducting hazardous substance cleanups under CERCLA and other federal laws.  *See* CERCLA § 105, 42 U.S.C. 9605; 40 C.F.R. Pt. 300.

[9] The term "person" includes an" individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body. . . . " 42 U.S.C. § 9601(21).

The term "facility" means

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or
> (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

*Id.* at § 9601(9).

> The term "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant), but excludes
> (A) any release which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons,
> (B) emissions from the engine exhaust of a motor vehicle, rolling stock, aircraft, vessel, or pipeline pumping station engine,
> (C) release of source, byproduct, or special nuclear material from a nuclear incident, as those terms are defined in the Atomic Energy Act of 1954 [42 U.S.C. 2011 *et seq.*], if such release is subject to requirements with respect to financial protection established by the Nuclear Regulatory Commission under section 170 of such Act [42 U.S.C. § 2210], or, for the purposes of section 9604 of this title or any other response action, any release of source byproduct, or special nuclear material from any processing site designated under section 7912 (a)(1) or 7942 (a) of this title, and
> (D) the normal application of fertilizer.

section 107(a).[10]

Section 113 was added in 1986 as part of SARA.  It contains a subsection entitled

---

*Id.* at § 9601(22).

>> (8) The term "environment" means
>>
>> (A) the navigable waters, the waters of the contiguous zone, and the ocean waters of which the natural resources are under the exclusive management authority of the United States under the Magnuson-Stevens Fishery Conservation and Management Act [16 U.S.C. 1801 *et seq.*], and
>> (B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States.

*Id.* at § 9601(8).

> "Disposal" is defined  as:

>> The discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

*Id.* at § 9601(29) (citing 42 U.S.C. § 6903(3)).

> [10]   There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by
> (1) an act of God;
> (2) an act of war;
> (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or
> (4) any combination of the foregoing paragraphs.

42 U.S.C. § 9607(b).

"Contribution," which states:

> Any person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)], during or following any civil action under [§§ 106 or 107(a)]. . . . In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§§ 106 or 107].

42 U.S.C. § 9613(f)(1).

Section 113 also provides that a PRP that "has resolved its liability to the United States or a State in an administrative or judicially approved settlement" is immune from claims for contribution from other PRPs "regarding matters addressed in the settlement." *Id.* at § 9613(f)(2). Section 113(f)(3) provides that a settling PRP may seek contribution from other, nonsettling PRPs. *Id.* at § 9613(f)(3)(B). Section 107(a) has a six-year statute of limitations and allows a plaintiff to recover 100% of its response costs from all liable parties, including those who have settled their CERCLA liability with the government. *Id.* at §§ 9613(g)(2), 9607(a). Section 113's explicit right to contribution is more restricted than that afforded by section 107. Section 113's right is subject to a three-year statute of limitations; plaintiffs may recover only costs in excess of their equitable share; and plaintiffs may not recover from previously settling parties. *Id.* at § 9613(f)(1), (f)(2), (g)(3).

Section 120(a)(1) of CERCLA, 42 U.S.C. § 9620(a)(1), was also enacted as part of the 1986 SARA amendments. It contains a broad waiver of the United States' sovereign immunity, providing that "[e]ach department, agency, and instrumentality of the United

14

States" is subject to CERCLA's provisions "in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 [CERCLA section 107] of this title."  Federal and state governments may sue in their enforcement capacity for response costs against potentially responsible parties, and may be liable for response costs as potentially responsible parties.  *See* 42 U.S.C. § 9607(a)(4)(A) and (B).

### B.    The Case Law Background

Before CERCLA was amended by SARA in 1986, lower courts disagreed on whether a PRP could bring an action against another PRP for contribution or cost recovery, and, if so, the source of authority for such an action.[11]  With the enactment of SARA, Congress added section 113(f), which expressly supplies PRPs with a cause of action against other PRPs in certain circumstances:  "during or following any civil action under [section 106] or under [section 107(a)]," 42 U.S.C. § 9613(f)(1) or after resolving "its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement, 42 U.S.C. § 9613(f)(3)(B). After Congress enacted SARA, courts of appeals consistently held that a PRP could not bring an action against another PRP for cost recovery, on a theory of joint and several liability, under

---

[11] *Compare City of Philadelphia v. Stepan Chemical Co.*, 544 F. Supp. 1135, 1140-1143 (E.D. Pa. 1982) (holding that PRP had right to cost recovery under section 107(a)(1)-(4)(B)), *and United States v. New Castle County*, 642 F. Supp. 1258, 1261-1269 (D. Del. 1986) (holding that PRP had right to contribution under federal common law), *with United States v. Westinghouse Electric Corp.*, No. IP 83-9-C, 1983 WL 160587, at *3-*4 (S.D. Ind. June 29, 1983) (holding that PRP had no right to contribution).

section 107(a), but was instead limited to an action for contribution under one of the two

provisions of section 113(f).[12]

In *Aviall Services, Inc. v. Cooper Indus., Inc.*, the Fifth Circuit, sitting *en banc*, held

that a PRP that entered into a voluntary cleanup agreement with a state agency could

maintain a contribution claim against other PRPs under section 113(f)(1) when no civil action

had been brought under section 106 or 107(a).  312 F.3d 677, 691 (5th Cir. 2002) (*en banc*).

The Supreme Court reversed and remanded, holding that to pursue an action for contribution

against another PRP under section 113(f)(1), a PRP must itself be sued under either section

106 or section 107(a).  *Cooper Industries, Inc. v. Aviall Services, Inc*., 543 U.S. at 165-168.

The Court left open the question whether a PRP could bring an action against another PRP

under section 107(a) but noted that "numerous decisions of the Courts of Appeals" had held

that an action under section 107(a) for cost recovery, on a theory of joint and several liability,

was unavailable.  *Id*. at 169.  Although the Court cautioned that the relationship between

section 107 and 113 deserved further consideration, it noted that "after SARA, CERCLA

provided for a right to cost recovery in certain circumstances, §107(a), and separate rights

to contribution in other circumstances, §§ 113(f)(1), 113(f)(3)(B)."  *Id*. at 163.  The Court

---

[12] *See Bedford Affiliates v. Sills*, 156 F.3d 416, 423-425 (2d Cir. 1998); *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp*., 153 F.3d 344, 356 (6th Cir. 1998); *Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R.*, 142 F.3d 769, 776 (4th Cir. 1998), *cert. denied*, 525 U.S. 963 (1998); *Pinal Creek Group v. Newmont Mining Corp*., 118 F.3d 1298, 1301 (9th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998); *New Castle County*, 111 F.3d at 1121-1124; *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996); *Control Data Corp. v. S.C.S.C. Corp*., 53 F.3d 930, 935 (8th Cir. 1995); *United States v. Colorado & E. R.R.*, 50 F.3d 1530, 1534-1536 (10th Cir. 1995); *United Technologies Corp. v. Browning-Ferris Indus*., 33 F.3d 96, 100 (1st Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995); *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994).

16

noted that the "cost recovery remedy of § 107(a)(4)(B) and the contribution remedy of § 113(f)(1) are similar at a general level in that they both allow private parties to recoup costs from other private parties.  But the two remedies are clearly distinct."  (*Id*. at n.3).

In the present case, Differential Development and Pro Cleaners have asserted cost recovery and contribution claims under section 107(a) and contribution claims under sections 113(f)(1) and 113(f)(3)(B).  Because *Cooper Industries* clarified the application of the two provisions of section 113(f), those claims are addressed before the section 107(a) claims that raise the question *Cooper Industries* left open.

## IV.    The CERCLA Claims under Section 113(f)

### A.    The Section 113(f)(1) Claim

Section 113(f)(1) allows "persons who have undertaken efforts to clean up properties contaminated by hazardous substances to seek contribution from other liable parties under CERCLA." *Vine St. L.L.C. v. Keeling*, 362 F.Supp.2d 757, 760 (E.D. Tex. 2005) (citing *Cooper Industries*, 543 U.S. at 159).  The section 113(f)(1) remedy is available only for "jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make."  *Vine St.*, 362 F. Supp.2d at 761 (citing *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994)).  In *Cooper Industries*, the Supreme Court held that a party must have been sued under section 106 or 107 to bring a section 113(f)(1) contribution claim:

> Section 113(f)(1) specifies that a party may obtain contribution "during or following any civil action" under CERCLA § 106 or § 107(a). The issue we must decide is whether a private party who has not been sued

> under § 106 or § 107(a) may nevertheless obtain contribution under
> § 113(f)(1) from other liable parties. We hold that it may not.

*Id.*, 543 U.S. at 160–61.  Neither Differential Development nor Pro Cleaners alleges that it

has been sued under section 106 or 107.  Instead, both have pleaded that they participated in

a voluntary cleanup program with the TCEQ.  Under *Cooper Industries*, they cannot sue for

contribution under section 113(f)(1).

The motions to dismiss the section 113(f)(1) claim are granted.

**B.     The Section 113(f)(3)(B) Claim**

Section 113(f)(3)(B) provides that a "person who has resolved its liability to the

United States or a State for some or all of a response action or for some or all of the costs of

such an action in an administrative or judicially approved settlement may seek contribution

from" a responsible party who has not settled.  42 U.S.C. § 9613(f)(3)(B).  This is a "separate

express right of contribution," independent of section 113(f)(1).  *Cooper Industries*, 543 U.S.

at 163.

Differential Development and Pro Cleaners allege that under their Voluntary Cleanup

Agreement with the TCEQ they have incurred and will incur substantial response costs to

clean up the PERC contamination under and near the shopping center.  (Docket Entry No.

84 at 14).  They allege that by participating in the VCP Agreement, they have resolved some

or all of their CERCLA liability to the State of Texas or the United States and can therefore

sue for contribution under section 113(f)(3)(B).  (Docket Entry No. 104 at 19).  The

defendants move to dismiss on the ground that a section 113(f)(3)(B) claim is not available

to a party who has enrolled in a voluntary cleanup program under state law because such enrollment is not a "settlement" that resolves federal or state CERCLA liability.

In *Consolidated Edison Company of New York, Inc. v. UGI Util.*, 423 F.3d 90 (2d Cir. 2005), the Second Circuit considered a similar issue.  In that case, the plaintiff had entered into a voluntary cleanup agreement with the New York State Department of Environmental Conservation.  The plaintiff alleged that it had already incurred more than $4 million in investigating and cleaning up contaminated sites and that the total amount could exceed $100 million.  The plaintiff sued for contribution under section 113(f)(3)(B), asserting that its voluntary cleanup agreement with the state environmental agency was an "administrative settlement" of CERCLA liability.  The court dismissed the contribution claim under section 113(f)(3)(B) on the ground that the agreement with the state agency only resolved state-law claims and did not resolve federal or state CERCLA claims.  The court noted that section 113(f)(3)(B) created a contribution right only when "liability for CERCLA claims, rather than some broader category of legal claims, is resolved."  The court explained:

> This seems clear because resolution of liability for 'response action[s]' is a prerequisite to a section 113(f)(3)(B) suit – and a 'response action' is a CERCLA-specific term describing an action to clean up a site or minimize the release of contaminants in the future. . . .[S]ection 113(f)(3)(B) does not permit contribution actions based on the resolution of liability for state law—but not CERCLA—claims.

423 F.3d at 95-96.  Other courts have reached similar results.[13]

---

[13] *See Asarco, Inc. v. Union Pac. RR. Co.*, CV 04-2144-PHX-SRB, 2006 WL 173662, at *7 (D. Ariz Jan. 24, 2006) ("It makes little sense that an agreement with a state agency based on state law without any authorization from federal authorities could serve as a springboard for a CERCLA contribution claim."); *City of Waukesha v. Viacom Int'l Inc.*, 01-C-0872, 2005 WL 3408016, at *2–6 (E.D. Wis. Oct. 31, 2005) (denying

The voluntary cleanup agreement at issue in *Consolidated Edison* offered significant protection to the participating party.  Completing the cleanup specified in the agreement would result in a release and covenant not to sue from the State Department of Environmental Conservation under a number of state statutes.  The Department also agreed that it would not seek to recover costs it might incur in future cleanup of the contaminated site.  423 F.3d at 96.  The Second Circuit nonetheless concluded that this agreement was not a "settlement" that could create a contribution right under section 113(f)(3)(B) because "the only liability that might some day be resolved under the Voluntary Cleanup Agreement is liability for state law—not CERCLA—claims."  *Id.*[14]

_____

motion to amend complaint to add a section 113(f)(3)(B) claim when the agreement did not resolve the plaintiff's CERCLA liability); *Ferguson v. Arcata Redwood Co., LLC*, C 03-05632 SI, 2005 WL 1869445, at *4 (N.D. Cal. Aug. 5, 2005) (dismissing section 113(f)(3)(B) claim on summary judgment because the state agency did not seek permission from the EPA before entering into a settlement with the plaintiff, nor did the state agency assert that it was exercising authority under CERCLA); *Cadlerock Props. Joint Venture v. Schilberg*, 3:01CV896 (MRK), 2005 WL 1683494, at *4, n.3 (D. Conn. July 19, 2005) (expressing doubt that "settlement of state environmental law obligations could . . . be considered equivalent to a judicially-approved federal settlement triggering contribution rights under § 113(f)(3)(B)"); *W.R. Grace & Co. v. Zotos Int'l, Inc.*, 98-CV-838S(F), 2005 WL 1076117, at *5 (W.D.N.Y. May 3, 2005) ("Just as a party must be sued under CERCLA before it can maintain a section 113(f)(3)(1) contribution claim, it must settle CERCLA liability before it can maintain a claim under section 113(f)(3)."); *Solvent Chem. Co. v. E.I. Dupont De Nemours & Co.*, 01-CV-425C(SC), 2005 WL 1523570, at *10, n.9 (W.D.N.Y. June 28, 2005) (acknowledging the holding in *W.R. Grace & Co.*); *City of Waukesha v. Viacom Int'l, Inc.*, 362 F.Supp.2d 1025, 1027 (E.D. Wis. 2005) (dismissing section 113(f)(3)(B) claim because the settlement did not resolve the plaintiff's "CERCLA liability" to the state); *Elementis Chem., Inc. v. T.H. Agric. and Nutrition, L.L.C.*, 373 F.Supp.2d 257, 265 (S.D.N.Y. 2005) ("Any person who has settled with . . . a State regarding its CERCLA liability may seek contribution from any other person who has not so settled."); *Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255 F.Supp.2d 134, 152 (W.D.N.Y. 2003) (noting that section 113(f)(3)(B) "authorizes a PRP who has administratively settled its liability under CERCLA" to seek contribution ); *Am. Special Risk Ins. Co. v. City of Centerline*, 180 F.Supp.2d 903 (E.D. Mich. 2001) (noting that to obtain contribution under section 113(f)(2), a party must resolve its CERCLA liability); *Laidlaw Waste Sys., Inc. v. Mallinckrodt, Inc.*, 925 F. Supp. 624, 632–33 (E.D. Mo.1996); *CPC Int'l v. Aerojet Gen. Corp.*, 759 F.Supp. 1269, 1283 (W.D. Mich. 1991) ("Section 113(f)(2) clearly contemplates a settlement over CERCLA liability.").

[14] Litigation has focused on whether federal or state administrative orders on consent (AOCs), such as those calling for performance of a removal action or an RI/FS (Remedial Investigations and Feasibility Studies) project, are "settlements" as that term is used in section 113(f)(3)(B), and on whether state AOCs

The VCP Agreement that Differential Development and Pro Cleaners entered into with the TCEQ is similar to the voluntary cleanup agreement at issue in *Consolidated Edison*. The VCP Agreement does not state that it resolves any claim under CERCLA. The Agreement states that it is not an admission of liability under TSWDA; it does not mention CERCLA. (*Id.* at 1) ("This agreement shall not be construed as an admission of liability under the [TSWDA] or any other law."). By applying for the TCEQ voluntary cleanup program, Differential Development and Pro Cleaners received assurance that the TCEQ would not bring an enforcement action while the Agreement was in effect. (Docket Entry No. 9, Ex. B at 6; Docket Entry No. 104, Ex. C at 6) ("During the term of this Agreement, TCEQ will not bring an enforcement action against Applicant for violations of statutes or regulations for the specific violations that are being remediated by this Agreement."). But the Agreement clearly states that it does not resolve any claim by or against the participating parties. (Docket Entry No. 104, Ex. C at 6–7) ("The parties to this agreement expressly reserve all rights, claims, demands, and causes of action they have against each other, and against any and all other persons and entities who are not parties to this Agreement.").

Differential and Pro Cleaners have not completed their obligations under the Agreement and are not released from any liability until they obtain a certificate of completion. They may withdraw from the Agreement at any time. (Docket Entry No. 9, Ex.

---

resolving state-law claims can trigger CERCLA claims for contribution. *See, e.g., Pharmacia Corp. v. Clayton Chem. Acquisition LLC*, No. 01-cv-0428-MJR, 2005 U.S. Dist. LEXIS 5286 (S.D. Ill. Mar. 8, 2005) (EPA AOC not a "settlement"); *W.R. Grace & Co. v. Zotos Int'l Inc.*, No. 98-CV-838(F), 2005 U.S. Dist. LEXIS 8755 (W.D.N.Y. May 3, 2005) (state AOC resolving state-law claims not a trigger for CERCLA contribution). Cases have also explored whether these AOCs can be trigger events, even if they are "settlements." *See ITT Industries, Inc. v. Borgwarner, Inc.*, 2006 WL 2460793 (W.D. Mich. Aug. 23, 2006).

2 at 5) ("It should be noted, that as provided for in HSC, Section 361.607, the executive director or the Applicant in its sole discretion may terminate the Agreement by giving 15 days advance written notice to the other.").   The TCEQ's agreement to refrain from an enforcement action terminates if the applicants withdraw before completing their cleanup obligations.   If and when the applicants obtain a certificate of completion, because—as discussed below—they are potentially responsible parties, they remain exposed to  liability "should response action standards change or additional contamination be discovered." (Docket Entry No. 9, Ex. B at 1, Ex. C at 1–2).  A TCEQ "Final Certificate of Completion" certifies that "necessary response actions have been taken" and states that "[a]n applicant who on the date of application submittal was not a responsible party under . . . Section 361.271 or 361.275(g) [of the TSWDA] . . . on the date of issuance of this certificate are qualified to obtain the protection from liability provided by § 361.610."  (Docket Entry No. 9, Ex. 3 at 1).  Section 361.610 of the Texas Health & Safety Code states that a successful applicant is released from "all liability to the state for cleanup of the areas of the site covered," but is not released from liability from "releases and consequences that the person causes."  TEX. HEALTH & SAFETY CODE § 361.610(a)(2) (Vernon 2005).  There is no statement in the Texas statute or the certificate of completion that the certificate releases state or federal CERCLA claims.

Differential Development and Pro Cleaners cite two cases to support their argument that their VCP Agreement with the TCEQ is a settlement of CERCLA claims under section 113(f)(3)(B).  In *Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255

F.Supp.2d 134, 152 (W.D.N.Y. 2003), the settlement was not an ongoing voluntary cleanup similar to that in *Consolidated Edison* and in the present case.  Instead, the settlement in *Pfohl Bros.* was a consent order that expressly resolved CERCLA as well as state-law claims. *Pfohl Bros.*, 255 F.Supp. 2d at 146, n.11.  The court in *Pfohl Bros.* stated that the settlement released liability "under CERCLA § 106 or § 107(a)." *Id.* at 152.  The *Pfohl Bros.* settlement expressly resolved CERCLA liability; the VCP Agreement does not.  The second case, *Fireman's Fund Ins. Co. v. City of Lodi*, 296 F.Supp.2d 1197 (E.D. Cal. 2003), involved a settlement that similarly released the plaintiff from "*all* liability which may be asserted" by the State, including CERCLA claims. *Fireman's Fund*, 296 F.Supp.2d at 1209–10 (emphasis added).  These cases recognize that a State agency may enter into a settlement with a PRP that resolves that PRP's CERCLA liability to the State.  *See* 42 U.S.C. § 9604(d)(1)(A); *W.R. Grace & Co.*, 2005 WL 1076117, at *4; *Asarco*, 2006 WL 173662, at *6.  When, however, a State agency has entered into a settlement agreement that does not specifically resolve the participant's CERCLA liability to the State, that agreement is not a "settlement"of CERLA liability that can serve as the basis for a section 113(f)(3)(B) claim.

Differential Development and Pro Cleaners also argue that the fact that the EPA may not enforce CERCLA claims against a party while it is participating in a voluntary state cleanup agreement means that their VCP Agreement with the TCEQ resolves at least part of their CERCLA liability to the federal government.  Section 128(b) of CERCLA provides that if:

> a person is conducting or has completed a response action regarding the specific release that is addressed by the response action that is in

> compliance with the State program that specifically governs response actions for the protection of public health and the environment, the President may not use authority under this chapter to take an administrative or judicial enforcement action under section 9606 (a) of this title or to take a judicial enforcement action to recover response costs under section 9607 (a).

42 U.S.C. § 9628(b)(1)(A).  The EPA has a Memorandum of Understanding with the Texas Natural Resources Conservation Commission (TNRCC), a predecessor to the TCEQ, under which the EPA agrees not to take federal enforcement action as to sites where investigation and cleanup under a VCP Agreement is pending.  (Docket Entry No. 22 at 27; Docket Entry No. 104, Ex. B).  In the Memorandum of Understanding, the EPA maintains the right to initiate or resume enforcement actions if the VCP Agreement applicant does not complete the necessary cleanup or if newly discovered facts show that the response action is inadequate.

The pending, but not complete, VCP Agreement among Differential Development, Pro Cleaners, and the TCEQ suspends enforcement actions but does not settle liability for any claims.  It is not a "final settlement with a potentially responsibly party" and does not "resolve liability to the United States or a State."  42 U.S.C. § 9622(g)(1), (f)(3)(B).  In analyzing the section 113 statute of limitations for contribution claims, the Supreme Court in *Cooper Industries* noted "the absence of any such provision for cases in which a judgment or settlement never occurs." 543 U.S. at 158–59 (*citing* section 113(g)(3)(A)–(B)).  Section 113(f)(3)(B) does not provide a basis to seek contribution for a settlement that has not yet been reached.

Moreover, the VCP Agreement on its face limits the release from liability that will result from a certificate of completion to claims under the TSWDA. The VCP Agreement does not state that any of the claims released are under CERCLA. As in *Consolidated Edison*, the Agreement in this case works towards resolution of state-law claims, not claims arising under CERCLA.

If and when obtained, the certificate of completion will not release claims against a potentially responsible party for changes in response action standards or for additional contamination that is discovered. Section 361.271(a) of the Texas Health and Safety Code defines a "responsible party" to include "any owner or operator of a solid waste facility" and any person who "owned or operated a solid waste facility at the time of processing, storage, or disposal of any solid waste by contract," or "by agreement, or otherwise, arranged to process, store, or dispose of, or arranged with a transporter for transport to process, store, or dispose of, solid waste owned or possessed by the person, by any other person or entity at: (A) the solid waste facility owned or operated by another person or entity." TEX. HEALTH & SAFETY CODE § 361.271(a)(1)-(3) (Vernon 2005). The fifth amended complaint alleges that Differential Development owned the shopping center where Pro Cleaners leased space and conducted the dry-cleaning operations using the PERC. The fifth amended complaint also alleges that Pro Cleaners arranged to have Safety-Kleen dispose of wastewater containing PERC. The complaint also alleges that Pro Cleaners discharged PERC wastewater into the City of Houston sewer system, from which it leaked. The complaint alleges facts that show that Differential Development and Pro Cleaners are responsible

25

parties under the TSWDA, as an owner and operator of a hazardous waste facility and as an arranger of the processing and disposal of solid waste that they owned. As responsible parties under the TSDWA, Differential Development and Pro Cleaners will remain exposed to claims by the TCEQ even if a certificate of completion issues.[15]

In summary, the VCP Agreement cannot be the basis for a contribution claim under section 113(f)(3)(B). The Agreement does not resolve claims, but merely agrees to work toward resolution. If and when a certificate of completion issues, that would not resolve state or federal CERCLA liability, but on its face would be limited to a release from liability for TSWDA claims that the TCEQ might bring. The motions to dismiss the contribution claim under section 113(f)(3)(B) are granted.

## V.    The Cost Recovery and Contribution Claims under Section 107(a) of CERCLA

### A.    The Issues Presented

The motions to dismiss raise the questions the Supreme Court in *Cooper Industries* left unresolved: whether a PRP may seek cost recovery under section 107 and whether that section includes an implied cause of action for contribution on which a PRP may rely independently of section 113. With respect to the former question, the Court noted that numerous decisions from the courts of appeals had held that a section 107(a) cost recovery action is only available to an innocent party—and not a PRP—but concluded that because the question had not been briefed, it was "more prudent to withhold judgment on these

---

[15]Differential Development and Pro Cleaners argue that they are not responsible parties under the TSWDA because they did not release any contaminant "into the environment," but only into facilities owned by others. This argument is also raised and is discussed in the context of the CERCLA section 107(a) claim.

matters." *Cooper Industries,* 543 U.S. at 169-70.  As to the second question, the Court noted that it had "visited the subject of implied rights of contribution before." *Id.* at 170-71 (citing *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638-47 (1981), and *Northwest Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 90-99 (1981)).  The Court stated that, "in enacting § 113(f)(1), Congress explicitly recognized a particular set (claims 'during or following' the specified civil actions) of the contribution rights previously implied by courts from provisions of CERCLA and the common law." *Id.* at 171. With that guidance, the Court reversed and remanded, recognizing that the lower courts would continue to face the questions.

Since the Court's decision in *Cooper Industries*, three courts of appeals have addressed the availability of a cause of action by one PRP against another PRP under section 107(a).  The Eighth Circuit's decision in *United States v. Atlantic Research*, , 459 F.3d 827, 832 (8th Cir.2006), and the Second Circuit's decision in *Consolidated Edison Co. of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90 (2005), *petition for cert. pending*, No. 05- 1323 (filed Apr. 14, 2006), conflict with the Third Circuit's decision in *E.I. DuPont de Nemours & Co. v. United States*, 460 F.3d 515 (2006), *petition for cert. pending*, No. 06-726 (filed Nov. 21, 2006).

In *Consolidated Edison*, one PRP sued another PRP under section 113(f)(1) to recover costs that it had incurred and would incur in cleaning up contamination at plant sites.  423 F.3d at 93-94.  The *Cooper Industries* decision made it clear that section 113(f)(1) was inapplicable, and the Second Circuit held that the PRP was not entitled to invoke section

113(f)(3)(B) based on its voluntary cleanup agreement. Although the plaintiff PRP had not

asserted that it could sue under section 107, and indeed had "appear[ed] willing to accept

. . . that section 107(a) may never provide a right of action for a [PRP]," 423 F.3d at 99, the

Second Circuit addressed that question and held that the plaintiff PRP could bring suit under

section 107(a). *Id.* at 97-103. The court acknowledged that it, like other courts of appeals,

had previously held that a PRP could not bring an action against another PRP for cost

recovery under section 107(a) but was instead limited to an action for contribution under

section 113(f). *Id.* at 98-99 (citing *Bedford Affiliates v. Sills*, 156 F.3d 416 (2d Cir. 1998)).

But the court concluded that its earlier decision had arisen in a different factual setting and

could have been decided without resolving that question. 423 F.3d at 99-102. The Second

Circuit changed course and held that "section 107(a) permits a party that has not been sued

or made to participate in an administrative proceeding, but that, if sued, would be held liable

under section 107(a), to recover necessary response costs incurred voluntarily." 423 F.3d at

100. The court reasoned that, under section 107(a), "[t]he only questions we must answer

are whether [the PRP] is a 'person' and whether it has incurred 'costs of response.'" *Id*. The

court found no basis for distinguishing between innocent parties and PRPs: "Section 107(a)

makes its cost recovery remedy available, in quite simple language, to any person that has

incurred necessary costs of response, and no-where does the plain language of section 107(a)

require that the party seeking necessary costs of response be innocent of wrongdoing." *Id*.

at 100. Acknowledging the concern that a PRP suing under section 107(a) would be entitled

to joint and several liability, the court observed that "there appears to be no bar precluding

a person sued under section 107(a) from bringing a counterclaim under section 113(f)(1) for offsetting contribution against the plaintiff volunteer [PRP]." *Id.* at 100, n.9. The Second Circuit added that, in its view, a contrary reading of section 107(a) would "impermissibly discourag[e] voluntary cleanup." 423 F.3d at 100.

The Eighth Circuit in *Atlantic Research Corp. v. United States* held that "a private party which voluntarily undertakes a cleanup for which it may be held liable, thus barring it from contribution under CERCLA's § 113, may pursue an action for direct recovery or contribution under § 107, against another liable party." 459 F.3d at 837. The plaintiff sought contribution from the United States for cleanup services performed at a facility where rocket monitors had been retrofitted for the United States. The Eighth Circuit, like the Second Circuit in *Bedford Affiliates*, had held in *Dico Inc. v. Amoco Oil Co.*, 340 F.3d 525, 531 (8th Cir. 2003), that a liable party could not bring an action under section 107. The Eighth Circuit, like the Second Circuit in *Consolidated Edison*, reconsidered that earlier holding in light of the decision in *Cooper Industries* and revised its precedent, relying almost entirely on the reasoning of *Consolidated Edison*.

In *DuPont*, the Third Circuit expressly rejected the approaches of the Second Circuit in *Consolidated Edison* and of the Eighth Circuit in *Atlantic Research* and held that a PRP cannot bring suit against another PRP under section 107(a). In *DuPont*, various PRPs sued the United States (as a PRP), seeking to recover costs for the cleanup of multiple sites nationwide. 460 F.3d at 525. Like the Second Circuit in *Consolidated Edison*, the Third Circuit began by recognizing that it had previously held that a PRP could not bring an action

29

against another PRP for cost recovery under section 107(a). 460 F.3d at 528 (*citing New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116 (3d Cir. 1997), and *In re Reading Co.*, 115 F.3d 1111 (3d Cir. 1997)). Unlike the Second Circuit, however, the Third Circuit did not view its earlier cases as distinguishable.  *Id*. at 530-531.  The Third Circuit also determined that "no intervening authority provides a basis sufficient to reconsider those precedents," *id.* at 528, reasoning that in *Cooper Industries,* the Supreme Court "did not explicitly or implicitly overrule our precedents" but instead "expressly declined to consider the very questions at issue here," *id*. at 532.  The Third Circuit rejected the argument that a rule precluding one PRP from suing another under section 107(a) would be "in direct opposition to CERCLA's broad remedial purpose."  460 F.3d at 533.  The court concluded that "SARA's settlement scheme is inconsistent with . . . a right" to recover costs for a voluntary cleanup.  *Id*. at 538.  Instead, the court reasoned, "Congress intended to allow contribution for settling or sued PRPs as a way to encourage them to admit their liability, settle with the Government, and begin expeditious cleanup operations pursuant to a consent decree or other agreement."  *Id*. at 541.  The Third Circuit acknowledged that "it could be that encouraging sua sponte voluntary cleanups by capable PRPs is in the public's interest, and would be a better way to protect health and the environment than pressuring them into settlement agreements."  460 F.3d at 542.  The court reasoned, however, that "[t]his is not self-evident."  *Id*. at 542-543.  Instead, the court concluded, "the debate over whether our national environmental cleanup laws should favor prompt and effective cleanups in any

30

manner . . . or should favor settlements and other enforcement actions . . . is a matter for Congress, not our Court." *Id.* at 543.[16]

The split in the circuits extends to their view of Fifth Circuit precedent.  In *DuPont*, the Third Circuit found that the Fifth Circuit's opinion in *Elementis Chromium L.P. v. Coastal States Petrol. Co.*, 450 F.3d 607, 613 (5th Cir. 2006), supported the view that even after *Cooper Industries* and *Consolidated Edison*, section 107(a) did not permit a PRP to sue another PRP under section 107(a).  The Fifth Circuit stated: "When one liable party sues another liable party under CERCLA, the action is not a cost recovery action under § 107(a), and the imposition of joint and several liability is inappropriate."  In *Atlantic Research*, the Eighth Circuit noted that the *Elementis* observation was made in a case involving whether the imposition of joint and several liability was appropriate in a contribution claim under section 113.  The Eighth Circuit found this to be an "isolated quotation" that was not entitled to weight because the Fifth Circuit was quoting a pre-*Cooper Industries* case, *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996).

Under current law, a PRP may bring a section 107(a) action against another PRP for cost recovery in the Second and Eighth Circuits, but is foreclosed from doing so in the Third Circuit and appears to be foreclosed from doing so in other circuits based on their pre-*Cooper*

---

[16]In all three circuits, district courts had found that PRPs could not bring a section 107(a) action. *Spectrum Int'l Holdings, Inc. v. Universal Coops., Inc.*, 2006 WL 2033377 (D. Minn. July 17, 2006) (holding that PRP has no cause of action under § 107(a)); *Boarhead Farm Agreement Group v. Advanced Envtl. Tech. Corp.*, 381 F.Supp.2d 427 (E.D. Pa. 2005) (same); *Blue Tee Corp. v. ASARCO, Inc.*, 2005 WL 1532955, at *6 (W.D. Mo. June 27, 2005) (same); *Elementis Chems., Inc. v. TH Agric. & Nutrition, LLC*, 373 F.Supp.2d 257 (S.D.N.Y. 2005) (same); *E.I. Du Pont De Nemours and Co. v. U.S.*, 297 F.Supp.2d 740 (D.N.J. 2003) (same).

*Industries* decisions holding that one PRP could not bring actions against another under section 107(a) in various circumstances in which the plaintiff PRP could not avail itself of section 113(f).[17]   District courts around the country are similarly divided on this issue.[18]

_____

[17] *See, e.g., Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1301-1306 (9th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998) (the PRP had not yet been sued under either section 106 or section 107(a) and was seeking to recover the costs of a voluntary cleanup); *United States v. Colorado & E. R.R.*, 50 F.3d 1530, 1534-1536 (10th Cir. 1995) and *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994) (PRP could not sue the defendant PRP under section 113(f) because the defendant PRP had reached a settlement with the government); *United Techs. Corp. v. Browning-Ferris Indus.*, 33 F.3d 96, 101 (1st Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995)(the PRP had failed to bring a section 113(f) contribution action within the applicable limitations period). Many of these cases state their holdings in broad terms that categorically foreclose a PRP from bringing an action against another PRP for cost recovery under section 107(a). *See, e.g., Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R.*, 142 F.3d 769, 776 (4th Cir.) (noting that "[section 113] must be used by parties who are themselves potentially responsible parties"), *cert. denied*, 525 U.S. 963 (1998); *New Castle County*, 111 F.3d at 1120 (stating that "[a]n action brought by a potentially responsible person is by necessity a section 113 action for contribution"); *Rumpke of Ind., Inc. v. Cummins Engine Co.*, 107 F.3d 1235, 1240 (7th Cir. 1997) (reasoning that, "when two parties who both injured the property have a dispute about who pays how much—a derivative liability, apportionment dispute—the statute directs them to § 113(f) and only to § 113(f)").

[18] Most district courts have found that PRPs do not have a right to bring section 107(a) contribution claims. *See Carrier Corp. v. Piper*, 2006 WL 3025842 (W.D. Tenn Sept. 30, 2006) ((holding that PRP has no cause of action under § 107(a)); *ITT Industries, Inc. v. Borgwarner, Inc.*, 2006 WL 2460793 (W.D.Mich. Aug. 23, 2006) (same); *Viacom, Inc. v. United States*, 404 F.Supp.2d 3 (D.D.C.2005) (same); *Metro. Water Reclamation Dist. of Greater Chi. v. Lake River Corp.*, 365 F .Supp.2d 913 (N.D.Ill. 2006) (same); *Spectrum Int'l Holdings, Inc. v. Universal Coops., Inc.*, 2006 WL 2033377; *R.E. Goodson Constr. Co. v. Int'l Paper Co.*, 2005 WL 2614927 (D.S.C. Oct. 13, 2005) (same); *Mercury Mall Assocs. v. Nick's Mkt., Inc.*, 368 F.Supp.2d 513 (E.D.Va. 2005) (same); *but see Glidden Co. v. FV Steel and Wire Co.*, 350 B.R. 96(E.D. Wis. 2006) (finding PRP can bring section 107(a) claim).

The Ninth Circuit lower courts are divided on the issue. *See AMCAL Multi-Housing, Inc. v. Pac. Clay Products*, 2006 WL 3016326 (C.D. Cal. Oct. 10, 2006) ("the Court finds that the AMCAL entities' status as a PRP bars its ability to bring an implied right of contribution under section 107 absent some basis for finding that it has a defense to being treated as a PRP."); *Aggio v. Aggio*, 2005 WL 2277037, at *5 (N.D. Cal. Sept. 19, 2005) ("because PRPs had an implied right to seek contribution under § 107(a) before [the 1986 amendments were] enacted, the savings clause of § 113 preserves this right"); *Kotrous v. Goss-Jewett Co. of N. Cal., Inc.*, 2005 WL 1417152, at *3 (E.D. Cal. June 16, 2005) ("the Ninth Circuit recognized an implied right of contribution in § 107. The enactment of § 113 in 1986 did not replace the implicit right of contribution in § 107," as those amendments "contained a savings clause"); *Adobe Lumber, Inc. v. Tacker*, 2005 WL 1367065 (E.D. Cal. May 24, 2005); *McDonald v. Sun Oil Co.*, 423 F.Supp.2d 1114 (D. Or. 2006) (allowing PRP to bring section 107 claim); *Ferguson v. Arcata Redwood Co.*, 2005 WL 1869445 (N.D. Cal. Aug. 5, 2005) (same); *see also Adobe Lumber, Inc. v. Hellman*, 415 F.Supp.2d 1070 (E.D. Cal. 2006) (staying discovery pending appeal to Ninth Circuit of the issue).

The Fifth Circuit has not directly addressed whether a PRP can bring a cost recovery action under section 107(a).  As the district court explained in the decision on remand from *Cooper Industries*, the Fifth Circuit's precedents do not squarely address or resolve whether a PRP can file a section 107(a) suit against another PRP, but must instead file a contribution action under section 113(f).  *Aviall Services v. Cooper Industries, L.L.C.*, 2006 WL 2263305 at *3-4; *see also Geraghty & Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917, 924 (5th Cir. 2000) (addressing whether CERCLA statute of limitations applies to initial contribution actions); *OHM Remediation Servs. v. Evans Cooperage Co.*, 116 F.3d 1574 (5th Cir. 1997) (finding that an innocent party with no "protectable interest" can sue under section107(a) and not section 113).  Differential Development and Pro Cleaners acknowledge that this court is not bound by "definitive precedent" on this issue.  (Docket Entry No. 104 at 23).

## B.      Analysis

### 1.      Are Differential and Pro Cleaners PRPs?

In the fifth amended complaint, Differential Development and Pro Cleaners assert that they are "not potentially responsible parties ("PRPs") or otherwise responsible parties, within the meaning of [section 107]," and therefore have a right to a cost recovery action for joint and several liability against the City of Houston, Harkrider, and Safety-Kleen under section 107(a). (Docket Entry No. 84 at 10).  They alternatively assert that if they are PRPs, they are covered by the innocent landowner defense of section 107(b)(3) and therefore entitled to a cost recovery action against the defendants.  Finally, they assert that even if they are PRPs,

they have a right to seek contribution under section 107(a) against the City, Harkrider, and Safety-Kleen for their equitable share of the response costs.

Differential Development was the owner of the shopping center when PERC contamination occurred and was discovered; Pro Cleaners owned and operated the dry-cleaning establishment that used and disposed of PERC. The fifth amended complaint alleges that PERC was found in and around the shopping center property; that PERC was delivered to and discharged from Pro Cleaners; and that Pro Cleaners arranged for the disposal of PERC. Differential and Pro Cleaners nonetheless argue that they do not fit within the statutory definitions that could make them potentially liable parties because they did not "release" PERC into the environment. Instead, Pro Cleaners discharged PERC-contaminated wastewater into the Houston sewer system, where gaps and cracks allegedly resulted in groundwater contamination; Pro Cleaners received PERC deliveries from Harkrider, whose trucks and containers spilled PERC; and Pro Cleaners used Safety-Kleen for waste management services, during which PERC spilled from Safety-Kleen's trucks and containers. Differential Development and Pro Cleaners acknowledge that Pro Cleaners was a "facility" but argue that it discharged PERC into other facilities—the City of Houston sewer and the Harkrider and Safety-Kleen trucks and containers—which in turn "released" PERC into the environment. Differential Development and Pro Cleaners argue that discharging PERC from their facility—the shopping center space leased by Pro Cleaners—to other facilities—the City sewer and the trucks and containers—is not releasing PERC into the environment but "facility-to-facility transfers." (Docket Entry No. 104 at 11; Docket Entry No. 84 at 11).

34

The statute and case law do not support the argument that Differential Development and Pro Cleaners are not PRPs because the "releases" were from one facility to another facility and from the second facility to the environment.  Section 107(a)(1) and (2) define a "covered person" to include a "the owner and operator of a . . . facility" and "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of."  A "facility" is "(A) any building, structure, installation, pipe or pipeline (including any pipe into a sewer . . . ) . . . or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . . ."  42 U.S.C. § 9601(9).  "Operator" is defined at 42 U.S.C. § 9607(20)(A) as any person operating the facility.  The fifth amended complaint alleges that the shopping center and the property on which it sits are areas where a hazardous substance, PERC, was stored, deposited, disposed of, and has come to be located.  Pro Cleaners, the shopping center, and the property on which it is located are "facilities" that Differential Development owned and that Pro Cleaners owned and operated.  The fifth amended complaint also makes it clear that PERC was deposited at Pro Cleaners and that Pro Cleaners disposed of wastewater containing PERC.

Under section 107(a)(1), a PRP includes a person who owned or operated a facility when the complaint was filed, regardless of when disposal occurred and regardless of causation.  *See Uniroyal Chemical Co., Inc. v. Deltech Corp.*, 160 F.3d 238, 250 (5th Cir. 1998) ("The express language of § 9607(a)(1) imposes liability on the owner or operator of a CERCLA facility without requiring a disposal."); *see also Honeywell Intern., Inc. v.*

*Phillips Petroleum Co.*, 415 F.3d 429, 433 at n.2 (5th Cir. 2005) (finding successor corporation liable for contaminated site).  Differential Development no longer owns the shopping center but did when this lawsuit was filed.  Pro Cleaners has operated of the dry-cleaning store since 1999.  (Docket Entry No. 84 at 3).  Pro Cleaners and Differential Development are PRPs under section 107(a)(1) as the owner and operator of a facility.

Under section 107(a)(2), a PRP includes the owner and the operator of a facility when hazardous substances were disposed of.  "Disposal" is "one of many different acts that qualify as a release under § 9601(22)."  *Uniroyal*, 160 F.3d at 245.  CERCLA defines the term "disposal" as: "[t]he discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."  "Disposal" includes "discharge, deposit, injection, dumping, spilling, leaking, or placing." 42 U.S.C. § 9601(29); *Uniroyal*, 160 F.3d at 245; *United States v. Fleet Factors Corp.*, 901 F.2d 1550, 1554 (11th Cir.1990); *United States v. Manzo*, 182 F.Supp.2d 385, 397 (D.N.J.2000); *New York v. Shore Realty Corp.*, 759 at 1042-44.  It is the disposal of hazardous substances during a person's ownership or operation that creates potential responsibility for that party.  42 U.S.C. § 9607(a)(2).

Differential Development owned the shopping center when PERC was disposed of and Pro Cleaners operated the dry-cleaning store that disposed of PERC.  The record does not support the argument that there was no "release" of a hazardous substance from Pro

Cleaners and the shopping center and therefore no PRP status. "Release" means "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." 42 U.S.C. 9601(22). "Release" is construed broadly. *See Amoco Oil Co.*, 889 F.2d at 669. The cases have made clear that depositing or discharging a hazardous substance into a sewer, a container, or other "facility" from which the substance subsequently leaks or spills is a "disposal" of hazardous substances that will subject the depositor or discharger to liability as a PRP. Release to a sewer or other container or facility that subsequently leaks or spills its contents is considered a release to the environment. *See, e.g., Vine Street*, 2006 WL 3190530 (release of dry-cleaning chemicals into the sewer); *Buffalo Color Corp. v. Alliedsignal, Inc.*, 139 F.Supp.2d 409, 417 (W.D.N.Y. 2001) ("[H]azardous chemicals were spilled both inside the plant as well as discharged into the Buffalo River and through the facility's sewer system to the on-site treatment plant. AlliedSignal attempts to argue that such spillage is not considered a release under CERCLA, but the law on the issue states the opposite."); *Lincoln Properties, Ltd. v. Higgins*, 1993 WL 217429 (E.D. Cal. 1993) ("The sewer system was owned and operated by Lincoln and the County. Thus, the dry cleaning defendants maintain that they cannot be held liable for PCE 'releases' because they discharged PCE into sewer lines for which others were responsible, but not directly into the 'environment' (i.e., the ground water and land surface). The court cannot agree."); *United States v. Mottolo*, 695 F.Supp. 615, 623 (D.N.H. 1988) (deposit of containers of hazardous substances is a release if those containers subsequently corrode and leak).

37

Neither section 107(a)(2)'s broad language—"disposed of"—nor other CERCLA sections provide an exception from PRP status for a covered person who has made a "facility-to-facility transfer" of a hazardous substance that is released into the environment. Instead, if a covered person owns or operates a facility "at which such hazardous substances were disposed of," that person may be subject to liability.   42 U.S.C. § 9607(a)(2). Differential Development and Pro Cleaners are PRPs under section 107(a)(2).

The allegations of the fifth amended complaint also show that Pro Cleaners is subject to liability as an "arranger," a "person who by contract, agreement, or otherwise arranged for disposal or . . . treatment, or arranged with a transporter for disposal or treatment, of hazardous substances owned or possessed by such person . . . ." 42 U.S.C. § 9607(a)(3).  The Fifth Circuit rejects "a bright-line test for determining when one is an arranger" and liberally interprets the term "arranged." *Geraghty & Miller*, 234 F.3d at 929.  Courts engage "in a case-by-case analysis of arranger liability, relying upon many factors." *Sea Lion, Inc. v. Wall Chem. Corp.*, 974 F.Supp. 589, 595 (S.D. Tex.1996).  Some of these factors include whether the person:  (1) engaged in a transaction for the purpose of waste disposal; (2) owned or possessed the waste; (3) had some actual involvement in the decision to dispose of the waste, or, alternatively had an obligation to control the disposal of the waste; (4) and/or controlled the waste's disposal regardless of whether it owned or possessed the waste.  *See Vine Street I*, 361 F.Supp.2d at 606.  In this case, the complaint allegations make clear that Pro Cleaners

hired Safety-Kleen to dispose of PERC that Pro Cleaners owned and possessed.[19]  Pro

Cleaners is a PRP under section 107(a)(3).

Differential Development and Pro Cleaners cite to *Westfarm Associates Limited*

*Partnership v. Washington Suburban Sanitary Commission*, 66 F.3d 669 (4th Cir. 1995), to

support their argument that they are not PRPs.  In that case, the Fourth Circuit found that a

sewer system operator was a PRP.  The poorly maintained sewer had released hazardous

material previously disposed into the sewer system by a dry-cleaning operator.  *Id.* at 680–81.

The court in *Westfarm* did not conclude that the dry-cleaning operator who released the

chemicals into the sewer system was not a PRP.  The district court treated both the dry-

cleaning operator and the sewer operator as PRPs.  *Id.* at 676.  The Fourth Circuit affirmed.

*Id.* at 690.

Differential Development and Pro Cleaners have alleged that they are not PRPs but

have also alleged facts that show that, as a matter of law, they are PRPs.  A court need not

---

[19] CBRE argues that this court should consider allegations in earlier complaint and related documents as an admission that Pro Cleaners discharged wastewater containing PERC into a lint trap, which leaked even before the wastewater was discharged into the City sewers.  (Docket Entry No. 92 at 4).  "It is believed that the contamination occurred, in part, from the discharge of dry cleaning chemicals to the sanitary sewer that serves the Shopping Center, including releases from or near the lint trap."  (Docket Entry No. 21 at 3 (first amended complaint); *see also* Docket Entry No. 31 at 3; Docket Entry No. 46 at 6 (second and third amended complaints)).  Differential Development and Pro Cleaners emphasize that this allegation has been eliminated from the fifth amended complaint and urge that it cannot be considered in a Rule 12(b)(6) motion to dismiss. They also argue that the earlier allegation merely stated  that PERC was found "within the lint trap and *in the vicinity* of the lint trap," a statement that does not rise to "an admission of the source of the contamination." (Docket Entry No. 104 at 7–8, n.5) (emphasis in original).  The allegations in prior complaints that have been eliminated in the latest complaint have been "amended away" and cannot be considered as judicial admissions.  *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 100 (5th Cir. 1993); *see also Baylor University Medical Center v. Western Growers Assurance Trust*, 2003 WL 21528676, at *2 (N.D. Tex. July 3, 2003) ("[A]ny alleged facts made in the Complaint and not incorporated in the Amended Complaint have been 'amended away.'").  Because this court finds that Differential Development and Pro Cleaners are PRPs without considering the alleged facts as to the discharge into the lint trap, it is unnecessary to decide whether these allegations or documents referring to them are appropriately considered under Rule 12(b)(6).

defer to legal conclusions in a complaint in deciding a motion to dismiss; only factual allegations are entitled to such deference. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) ("[L]egal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"); *see also United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n. 2 (9th Cir. 1986) ("While the court generally must assume factual allegations to be true, it need not assume the truth of legal conclusions cast in the form of factual allegations").

Differential Development and Pro Cleaners argue that even if they are PRPs, they are entitled to one of the statutory defenses and may sue as an innocent party under section 107(a).[20] The cases recognize that under CERCLA, "[i]t is possible that a private party may qualify as an 'innocent' plaintiff enabling it to bring a cost recovery action based on Section

---

[20]*See Western Prop. Service Corp. v. Shell Oil Co.*, 358 F.3d 678, 690 at n.53 (9th Cir. 2004) ("We note that *Pinal Creek* restricted its definition of a PRP, expressly excluding "those 'persons] otherwise liable' under § 107(a) who can establish they are not liable by virtue of the defenses set forth in § 107(b)." Under the *Pinal Creek* definition, which we adopt in this case, a statutory innocent owner is not a PRP. . . . This definition comports with our decisions in *Cadillac Fairview/Cal., Inc. v. Dow Chem. Co.*, 840 F.2d 691 (9th Cir.1988), and *Carson Harbor Vil., Ltd. v. Unocal Corp., 270 F.3d 863* (9th Cir.2001) (en banc), in which non-polluting landowners proceeded under § 107(a) claims without objection from our court.") (citations omitted); *Dico, Inc. v. Amoco Oil Co.*, 340 F.3d 525, 531 (8th Cir. 2003) ("When one of the enumerated CERCLA defenses applies a PRP is deemed innocent; and an action between an innocent party and another PRP is not between two liable parties."); *Morrison Enter., v. McShares, Inc*., 302 F.3d 1127, 1133 (10th Cir.2002) ("[A] party that can show that it is entitled to one of the defenses under § 9607(b) should be able to sue under § 9607(a); after all, such a party is not a PRP for purposes of the statute."); *Bedford Affiliates v. Sills*, 156 F.3d 416, 425 (2d Cir. 1998) ("[A] potentially responsible person under § 107(a) that is not entitled to any of the defenses enumerated under § 107(b)-like Bedford-cannot maintain a § 107(a) action against another potentially responsible person."); *Rumpke of Indiana, Inc. v. Cummins Engine Co.*, 107 F.3d 1235, 1241 (7th Cir. 1997) ("If one were to read § 107(a) as implicitly denying standing to sue even to landowners like Rumpke who did not create the hazardous conditions, this would come perilously close to reading § 107(a) itself out of the statute. . . . We conclude instead that landowners who allege that they did not pollute the site in any way may sue for their direct response costs under § 107(a)."); *Pinal Creek Group v. Newmont Min. Corp*., 118 F.3d 1298, 1300 (9th Cir. 1997) ("Our use of the term PRP, and our opinion today, does not cover those "persons] otherwise liable" under § 107(a) who can establish they are not liable by virtue of the defenses set forth in § 107(b)."); *Columbus McKinnon Corp.*, 2006 WL 2382463, at *3 (holding 107(a) plaintiff pleading as not a PRP not subject to dismissal); *Cooper Industries*, 2006 WL 2263305, at *4 ("The court did not discuss, for instance, whether the plaintiffs qualified for the "innocent landowner defense" under § 107(b)(3) and thus were not PRPs.").

107(a) alone, but, in practice, it is rare." *Basland, Bouck, & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1302 (11th Cir. 2002) (quotations and citations omitted) (allowing an innocent plaintiff, an environmental firm, to sue under 107(a)).  The "innocent" plaintiff is usually—but not always—the government.[21]

The elements of the innocent landowner defense are that:  1) another party was the "sole cause" of the release and resulting damages; 2) this other party did not cause the release in connection with a contractual or agency relationship with the PRP; and 3) the PRP exercised due care and guarded against the foreseeable acts and omissions of the third party. *Id.* at 682 (cited by *S. Pac. Transp. Co. v. Voluntary Purchasing Groups*, 1997 WL 457510 (N.D. Tex. Aug. 7, 1997)); 42 U.S.C. § 9607(b).  This defense is "a limited affirmative defense based on the complete absence of causation."  *S. Pac. Transp. Co.*, 1997 WL 457510 at *7 (citing *United States v. Monsanto Co.*, 858 F.2d 160, 168 (4th Cir.1988), *cert. denied,* 490 U.S. 1106 (1989)).  The fifth amended complaint alleges that Pro Cleaners, which was in a contractual relationship with Differential Development, disposed of PERC and that the PERC was released.  The complaint also alleges that Harkrider and Safety-Kleen, which were in contractual relationships with Pro Cleaners, released PERC owned by Pro Cleaners.  As a matter of law, Differential Development and Pro Cleaners are not innocent landowners

---

[21]*Schaefer v. Town of Victor*, 457 F.3d 188 (2d Cir. 2006) ("The language of CERCLA suggests Congress planned that an innocent party be able to sue for full recovery of its costs, i.e., indemnity under § 107(a).") (citations and emphasis omitted); *E.I. DuPont De Nemours and Co. v. United States*, No. 04-2096, 2006 WL 2474339 (3d Cir. 2006) ("Innocent parties were allowed to recover their full response costs from any PRP under § 107(a)(4)(B)"); *Rumpke of Ind., Inc. v. Cummins Engine Co., Inc.*, 107 F.3d 1235 (3d Cir. 1997) (allowing innocent plaintiff to proceed under section 107(a)).

under section 107(b).  *See Apex Oil Company, Inc. v. U.S.*, 208 F.Supp.2d 642, 655 (E.D. La. 2002).

Differential Development and Pro Cleaners are, as a matter of law, PRPs and cannot quality as "innocent landowners."  The issue is whether as PRPs they may bring a section 107(a) cost recovery or contribution claim.

> 2.   *The Post-Cooper Industries Question:  Can a PRP bring a Section 107(a) Claim Against Another PRP?*

The question of a PRP's statutory right to contribution under section 107(a) was squarely addressed on remand by the Northern District of Texas in *Aviall Services v. Cooper Industries*, 2006 WL 2263305.  In that case, the plaintiff argued, as the plaintiffs do here, that the second use of the word "other" in section 107(a)(4)(B)—"any other person"—includes anyone other than the United States government, a State, or an Indian tribe, so that one PRP may sue another.  *Id.* at *6.  The defendant argued, as the defendants do here, that the second use of the word "other" in section 107(a)(4)(B) means anyone not previously identified in section 107(a), limiting section 107(a) actions to the persons listed in section107(a)(4)(A)—the United States Government, a State, or an Indian Tribe—and persons who are not PRPs.  The district court adopted the second reading.  *Id.* at *6. Differential Development and Pro Cleaners argue that this interpretation is grammatically incorrect because it ignores "the obvious antecedent in sub-paragraph (a)(4)(A)—the aforementioned governmental entities and Indian tribes."  (Docket Entry No. 104 at 20).

Those who fall into the four categories listed in section 107(a)(1)-(4) are liable for "any other necessary costs of response incurred by any other person consistent with the

42

national contingency plan."  42 U.S.C. 9607(a)(1)-(4)(B).  The most natural reading of the phrase "any other person" is that it excludes the persons who are the subject of the sentence, the PRPs identified in the four categories of section 107(a)(1) to (4).  This reading of the statute makes covered persons liable for response costs incurred by persons other than PRPs, "innocent" private parties who have incurred the requisite costs. *See New Castle County*, 111 F.3d at 1120; *United Technologies*, 33 F.3d at 99-100. Under this reading, section 107(a)(1)-(4)(B) does not authorize PRPs to sue each other for cost recovery.

In *Aviall v. Cooper Industries*, the district court read CERCLA "holistically" to conclude that "any other person" in section 107(a)(4)(B) refers to any person other than those identified in section 107(a)(1) to (4)(A).  The court focused on the relationship between sections 107(a) and 113(f) in identifying the statutory mechanism for a PRP to recover necessary response costs.  The court concluded that limiting "any other person" to any person other than federal and state governments and Indian tribes would make the more narrow and specific section 113(f) provisions meaningless because PRPs seeking recovery from other PRPs could use section 107(a).  2006 WL 2263305 at *6–7; *see also Bedford Affiliates*, 156 F.3d at 423–24.  "Were the court to interpret § 107(a) as Aviall does, a PRP could bring a cost recovery action under § 107(a) against a person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement and, under § 113(f)(2), for example, would not be liable for claims for contribution regarding matters addressed in the settlement. But because, unlike § 113(f), a claim under § 107 is not for contribution, the settling person would not be entitled to the protection of § 113(f)(2)."

*Aviall v. Cooper Industries*, 2006 WL 2263305 at *6. Reading "any other person" in section 107(a)(4)(B) to allow a PRP to sue another PRP would also enlarge the three-year limitations period that Congress provided in section 113(f), because section 107(a) has a six-year limitations period. This interpretation would also allow a PRP who could only recover from other PRPs costs that exceeded its proportionate share of the costs under section 113(f) to recover all of those costs under section 107(a). As the court concluded in *Aviall v. Cooper Industries*, this interpretation of section 107(a) "would at a minimum render key provisions of § 113(f) superfluous, insignificant, or, in some instances, devoid of operative effect, violating a cardinal principle of statutory construction." 2006 WL 2263305 at *6.

Interpreting "any other person" in section 107(a)(4)(B) to refer only to persons other than federal and state governmental entities and Indian tribes makes other language in section 107(a) superfluous as well. Section 107(a)(1)–(4)(B) refers to "other necessary costs," which are costs other than the costs specified in section 107(a)(1)–(4)(A). *See, e.g., Wickland Oil Terminals v. Asarco*, Inc., 792 F.2d 887, 891 (9th Cir. 1986). This language ensures that those governmental entities and Indian tribes can recover only under section 107(a)(1)-(4)(A) and are precluded from recovering under section 107(a)(1)-(4)(B). Interpreting "any other person" in section 107(a)(4)(B) to mean only "any person other than the United States government, a state, or an Indian tribe" would make this language superfluous.

Differential Development and Pro Cleaners argue that the Fifth Circuit adopted a broad definition of "any other person" in another CERCLA case, *OHM*, 116 F.3d at 1579. (Docket Entry No. 104 at 16). In *OHM*, the court found that an independent contractor could

44

recover from PRPs under section 107(a), despite not having a "protectable interest" in the polluted site.  "Far from a limitation, [sections 107(a)(4)(A) and 107(a)(4)(B)] evince[] congressional intent that anyone is entitled to recover response costs.  In addition we have been unable to find any legislative history in CERCLA or SARA amendments that Congress ever intended such a 'protectable interest' inquiry." *Id.*  In that case, unlike the present case, the plaintiff was an innocent party, not a PRP.  The court concluded in *OHM* that an innocent party should sue under section 107 and not section 113, which Congress intended to address PRP contribution from other PRPs.  *OHM*, 116 F.3d at 1581–82. *OHM* does not support the result Differential Development and Pro Cleaners seek.

The district court in *Aviall v. Cooper Industries* correctly noted that interpreting section 107(a)(4)(B) to preclude a PRP from bringing a cost recovery claim against other PRPs was consistent with the holdings of the circuits addressing the question before the Supreme Court decided *Cooper Industries*.  2006 WL 2263305 at *8.  Many of the pre-*Cooper Industries* decisions, and some of those issued since, conclude that although section 107 creates the general liability scheme by identifying the relevant parties, section 113(f) creates the exclusive mechanism for a PRP to recover response costs.  *Id.* (collecting cases).

This court agrees with the conclusion reached on remand in *Aviall v. Cooper Industries*, that section 107(a) does not give a private PRP a statutory right to bring a cost recovery action against other PRPs.  Congress created a separate contribution remedy in section 113(f), subject to specific conditions and limitations not included in section 107(a). Refusing to recognize such a suit as authorized under section 107(a) is also consistent with

45

the Supreme Court's cautionary statement in *Cooper Industries* that Congress had codified only a subset of rights for PRPs in section 113. 451 U.S. at 630.

This court finds that Differential Development and Pro Cleaners, as PRPs, have no statutory right to bring a cost recovery action against other PRPs under section 107(a).

> 3.   *The Second Post-Cooper Question: Does Section 107(a) Provide a Basis for a Contribution Claim?*

In *Cooper Industries*, the Supreme Court also declined to address whether section 107(a) provides an implied right of contribution. The Supreme Court noted that it had "visited the subject [of implied rights of contribution] before," in *Texas Industries, Inc. v. Redcliff Materials, Inc.*, 451 U.S. 630 (1981), which declined to find an implied or common-law contribution rights in the context of the Sherman Act or Clayton Act, and *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 90-99 (1981), which declined to find such a right in the Equal Pay Act or Title VII of the Civil Rights Act. The Supreme Court also noted in *Cooper Industries* that "in enacting § 113(f)(1), Congress explicitly recognized a particular set of the contribution rights previously implied by courts from provisions of CERCLA and the common law." 543 U.S. at 159.

On remand from the Supreme Court, the district court in *Aviall v. Cooper Industries* followed the Supreme Court's cautionary language and refused to recognize an implied section 107(a) contribution right:

> Section 113(f)(1) provides a PRP the express right to seek contribution from another PRP; § 107(a) does not. Considering the Supreme Court's cautionary statements in *Cooper Industries* and other decisions that reject the adoption of implied remedies —particularly where, as here, the statute expressly confers a

46

right of contribution—the court holds there is no implied right
of contribution under § 107(a) or federal common law.

2006 WL 2263305, at *9–10.  The district court also noted that if section 107(a) or federal

common law were read to authorize contribution actions, regardless of the existence of a

section 106 or 107(a) civil action, the language of section 113(f) limiting contribution actions

to those "during or following" a section 106 or 107 action would be superfluous and the

language in section 113(f)(3)(B) permitting contribution actions after settlement would be

superfluous.  *Id.* at 10.

Differential Development and Pro Cleaners urge this court to follow the contrary

holding in *Vine Street*, 362 F.Supp.2d at 763.  In that case, the court did find an implied right

for PRPs to sue under section 107(a).  The court found that section 113(f)(1)'s "saving

clause" was intended to preserve the right of a PRP to sue another PRP under section 107(a).

*Id.* at 763–64.  The court concluded  that section 107(a) creates two kinds of recovery: one

for an innocent party, and one for a PRP, "akin to a joint tortfeasor."  *Id.* at 763.

The saving clause in section 113(f)(1) states that "[n]othing in this subsection shall

diminish the right of any person to bring an action for contribution in the absence of a civil

action under [Section 106 or Section 107]."   In *Cooper Industries*, the Supreme Court

explained that the saving clause "does [not] . . . expand § 113(f)(1) to authorize contribution

actions not brought 'during or following' a § 106 or 107(a) civil action."  The Court observed

that while the saving clause "rebuts any presumption that the express right of contribution

provided by the enabling clause [in § 113(f)(1)] is the exclusive cause of action available to

a PRP, it does not "specify what causes of action for contribution, if any, exist outside §

47

113(f)(1)." *Id*. at 166-67.  As the Third Circuit noted in *DuPont*, there is at least one express

contribution action under CERCLA outside section 113(f)(1):  contribution for settling PRPs

under section 113(f)(3)(B).  The Third Circuit concluded that the section 113(f)(1) saving

clause clarified that "'a contribution action brought following a settlement under the aegis

of Section 113(f)(3) should not be held to be procedurally insufficient because of an absence

of a prior primary action pursuant to CERCLA Sections 106 or 107.'"  *DuPont*, 460 F.3d at

532-33 (citing *DuPont*, 297 F.Supp.2d at 754).  The saving clause preserves the ability of a

PRP to bring an action for contribution (as distinct from cost recovery) under any other

provision of law, including state law.  *See, e.g., Atherton v. FDIC*, 519 U.S. 213, 227-228

(1997).  The saving clause does not, in itself, provide a sufficient basis to imply a

contribution right under section 107(a).

The plaintiffs argue that "strong public policy" support a PRP's right to sue other

PRPs for cost recovery or for contribution under section 107(a).  As noted in cases denying

such a right, the public policy arguments cut in both directions.  Allowing a PRP to bring a

suit under section 107(a) that could not be brought under section 113(f) could undermine the

CERCLA settlement scheme, because a PRP not yet sued under section 106 or 107 could

refuse to settle with the government to preserve its right to sue under section 107(a), which

has substantially more generous provisions than section 113(f).  More importantly, such

policy decisions are for Congress rather than courts to decide.  As the Third Circuit recently

stated, "[t]he fact that DuPont and the other appellants, if they are allowed contribution for

response costs voluntarily incurred, may be capable of reaching a good result without the

48

Government oversight provided for in SARA, is not a reason to reconsider our prior holdings that the statute precludes such causes of action. And, in any event, the debate over whether our national environmental cleanup laws should favor prompt and effective cleanups in any manner (including sua sponte voluntary cleanups by PRPs), or should favor settlements and other enforcement actions to ensure that wrongdoers admit their fault and fix the problem under the aegis of Government oversight, is a matter for Congress, not our Court." *DuPont*, 460 F.3d at 543.  Moreover, finding no implied right of contribution for PRPs under section 107 or federal common law does not foreclose all avenues for Differential Development and Pro Cleaners to seek contribution for response costs.  If they settle their federal or state CERCLA claims, they will be able to satisfy the conditions for suit under section 113(f)(3)(B).  They may also pursue available state-law cost recovery and contribution claims.  Tex. Health & Safety Code § 361.344.

It is apparent on the face of the complaint that Differential Development and Pro Cleaners are PRPs and as such, they face a legal impediment to stating a claim under section 107(a) or 113(f) of CERCLA  for either cost recovery or contribution.  The motions to dismiss those claims are granted.

### III.    The Remaining Claims

Under 28 U.S.C. § 1367(c)(3), when federal claims that serve as the basis of subject-matter jurisdiction are dismissed and only state-law claims remain, a district court has broad discretion to dismiss the state-law claims without prejudice to permit them to proceed in state

court.[22]  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350–52 (1988); *see also McGowin v. ManPower Intern., Inc.,* 363 F.3d 556, 558 at n.1 (5th Cir. 2004) ("[The federal law] claim, though abandoned, permits a district court to exercise supplemental jurisdiction over remaining state claims."); *Brown v. Sw. Bell Telephone Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990) ("[T]he decision as to whether to retain the pendent claims is within the sound discretion of the district court.").   A court considering whether to continue to exercise supplemental jurisdiction over such state-law claims must consider the provisions of section 1367(c) and the factors the Supreme Court outlined in *Cohill*, 484 U.S. at 350–51, and *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  *See Certain Underwriters at Lloyd's, London v. Warrantech Corp.,* 461 F.3d 568, 577–78 (5th Cir. 2006); *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002).  Those factors include judicial economy, convenience, fairness, and comity.  *See Underwriters*, 461 F.3d at 582, n.7; *see also Jones v. Adam's Mark Hotel*, 840 F. Supp. 66, 69 (S.D. Tex. 1993).

The "general rule" is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are eliminated from a case before trial.  *Underwriters*, 461 F.3d at 578; *Amedisys*, 298 F. 3d at 447 (*citing Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th

---

[22]    The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. § 1367(c).

Cir. 1999)).  The dismissal of a plaintiff's federal claims "provides 'a powerful reason to choose not to continue to exercise jurisdiction,'" although "no single factor is dispositive in this analysis." *Amedisys*, 298 F. 3d at 447 (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998)).  Dismissal of federal claims in an "early stage" of litigation is also a "powerful reason to choose not to continue to exercise jurisdiction." *Underwriters*, 461 F.3d at 579, n.62 (citing *Cohill*, 484 U.S. at 351).

In *Amedisys*, the Fifth Circuit affirmed the district court's decision to retain jurisdiction over the plaintiff's remaining state law claims after dismissing the plaintiff's Title VII claims.  298 F.3d at 447.  The appellate court noted that the remaining claims did not involve "novel or complex" issues of state law and that there were no "exceptional circumstances" for refusing to retain jurisdiction. *Id.* (*quoting* 28 U.S.C. § 1367(c)).  On the other hand, state law claims predominated and the federal court had dismissed the only federal claims.  With the statutory factors in equipoise, the appellate court emphasized that the factors of judicial economy, convenience, fairness, and comity "weigh[ed] heavily toward retaining jurisdiction." *Id.*  The case had been pending for nearly three years, the parties had taken numerous depositions, and the matter had progressed to advanced stages of litigation. The district court had "devoted many hours" in reaching the decisions in its "comprehensive summary judgment ruling."  The Fifth Circuit explained that the trial court had "substantial familiarity with the merits of the case," noting that the trial court had expended considerable resources reviewing the parties' memoranda, exhibits, and record and to researching the issues involved in the case. *Id.* (quoting *Parker & Parsley Petroleum Co. v. Dresser Indus.*,

972 F.2d 580, 587 (5th Cir. 1992)).  The district court's decision to retain jurisdiction was not an abuse of discretion.

Under a similar analysis, in *Batiste*, the Fifth Circuit concluded that the district court had abused its discretion in declining jurisdiction over pendent state law claims after entering summary judgment on the plaintiffs' other claims.  179 F.3d at 227–28.  The appellate court determined that the remaining claims did not involve any "novel or complex" issues of state law and that the factors of judicial economy, convenience, and fairness to the parties strongly weighed in favor of retaining jurisdiction.  *Id.* at 227.  The court noted that the case, which had been pending for nearly three years, had involved numerous depositions, discovery disputes, and motions.  *Id.* at 227–28.  "The familiarity of the district court with the merits of the [plaintiffs'] claims demonstrates that further proceedings in the district court would prevent redundancy and conserve scarce judicial resources."  *Id.* at 228.

In *Underwriters*, the federal district court granted summary judgment dismissing the only federal cause of action.  The court also entered final judgment dismissing the state-law counterclaims.  461 F.3d at 571. The Fifth Circuit found that "all claims with even a tenable connection to federal jurisdiction were dismissed very early in the litigation" and concluded "the absence of any claims with any connection to federal law at such an early point in the litigation suggests that the district court abused its discretion in exercising supplemental jurisdiction over [the] state-law counterclaims."  *Id.* at 578–79.

This court has dismissed the only claims in this case that provide a basis for federal subject-matter jurisdiction in federal court.  Although Differential Development and Pro

Cleaners seek relief under the federal Declaratory Judgment Act, that is not an independent source of jurisdiction. The factors of "judicial economy, convenience, fairness, and comity," *Amedisys*, 298 F.3d at 447, weigh in favor of dismissing the remaining state-law claims in this case. The procedural history of this case more closely resembles *Underwriters* than *Amedisys* or *Batiste*. This court is dismissing the federal causes of action early in the case. This Memorandum and Opinion is the first on the merits of this case and there has been minimal discovery. There is no basis on this record to retain jurisdiction over the state-law claims. *See Underwriters*, 461 F.3d at 578 ("[I]t is our 'general rule' that courts should decline supplemental jurisdiction when all federal claims are dismissed or otherwise eliminated from a case.").

Because this court dismisses the federal-law claims and declines jurisdiction over the state-law claims, it does not reach the remaining motions. (Docket Entry Nos. 92, 100).

## IV.    Conclusion

The motions to dismiss the CERCLA claims are granted. (Docket Entry No. 97). Because this court declines to continue to exercise jurisdiction over the remaining state-law claims, those claims are dismissed, without prejudice.

SIGNED on January 9, 2007, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge